LOTTINGER, Judge.
This is a Workmen’s Compensation suit wherein the plaintiff, Irvin Pearl, has sued Associated Indemnity Corporation and Pearce & LeBlanc, Inc. The plaintiff amended its petition to change the name of the insurer from Associated Indemnity Corporation to Market Insurance Company. From a judgment in favor of the defendant the plaintiff has appealed.
The Trial Court has most adequately stated the facts of this case, and we are therefore adopting both the statement of facts as recited by the Trial Judge and his reasons for judgment as our own.
*30 “Plaintiff herein sues for Workmen’s Compensation benefits as a result of an injury sustained in a traffic accident on June 8, 1966. The plaintiff was employed at the time as a common laborer for Pearce and LeBlanc Construction Company.
The defendants admit that the accident occurred while plaintiff was in the course and scope of his employment and that the plaintiff sustained some injuries. However, they deny the plaintiff is disabled to perform his job as a result of the accident and, further, aver that if he had a disability its inception or source occurred before the accident complained of.
Four physicians testified concerning the injuries of the plaintiff. The original treating physician, a Dr. O’Quinn, was not available as a witness, but Dr. Frank Reiger in whose office Dr. O’Quinn was associated in the practice of medicine at the time said from his office records and his own treatment of the patient Irvin Pearl that he sustained some visible injuries as a result of the accident, particularly to his neck. However, Dr. Reiger further qualified his opinion by stating that he did not personally examine Pearl until July 15, 1966, more than a month after the accident.
He said that Pearl had persistent complaints regarding pain in his hand and that he was convinced of Pearl’s sincerity, but in view of the fact that there was very little in the way of signs of obvious symptoms of injury he referred the patient to Dr. Allen Jackson, an orthopedic surgeon, in August of 1966.
Dr. Allen Jackson testified he examined Pearl on August 15, 1966, a little more than two months after the accident. He related that the X-rays, he took were negative insofar as the plaintiff’s neck and showed an old Bennett’s fracture which had mal-united. Dr. Jackson testified that there was no disability in the hand. He •further declared that he could find no source for the pain which the plaintiff experienced. He positively stated that the Bennett’s fracture did not occur or could not have occurred in the accident of June 8, 1966.
Subsequently Dr. Reiger referred the plaintiff to Dr. Jack Loupe, an orthopedic surgeon, who examined the plaintiff on August 31, 1967. Dr. Loupe testified that from the X-rays, his findings of injury to the plaintiff’s neck were negative and he said further that X-rays of the hand 'showed-' atr"old Bennett’s fracture, that he anticipated no treatment for the hand and he declared that the injury predated the accident. Dr. Loupe before he came to Court also examined X-rays made by Dr. Jackson some two months after the accident and he testified that it emphasized in his mind that the fracture which he observed was an old fracture predating the accident. He said that while there may have been some mild restriction on the thumb or limitation of motion of the thumb at the time he examined the plaintiff, that he found no disability as far as the plaintiff’s being able to perform the duties of his job.
Thereafter, at the instance of the defendants the plaintiff submitted to a medical examination by Dr. William E. Smith, an orthopedic surgeon, who examined plaintiff on August 30, 1967. X-rays were taken of plaintiff’s neck and right hand. Dr. Smith concurred in the testimony made by the examination of the other orthopedic surgeons and found no injury to the plaintiff’s neck. He said that he did find a Bennett’s fracture of the base of the metacarpal bone and a mal-position of certain fragments associated with that bone. He said that the fracture was well healed and that he felt that the fracture was probably more than thirteen months old, which would place the injury, at least the fracture, as occurring before the accident of June 8, 1966. Dr. Smith said that he found some disability and his estimate of this disability based on the objective evidence was twenty-five per cent disability of the right thumb or twelve and a half *31 per cent disability of the right hand, which, in his opinion, he believed was a permanent disability. He further testified that he did not believe that a prospective employer would hire the plaintiff based on the disability of the thumb, but would have to obtain a waiver before he would be so employed.
Now, in view of the substantial amount of medical treatment and examination and findings concerning the plaintiff’s injury, it is manifest to the Court that the plaintiff’s physical condition has been well documented from a medical standpoint. While the Court cannot ignore the plaintiff’s statement concerning his ailments, in this case with the wealth of medical evidence available the Court must, of course, give very great weight to these findings. This does not mean that the Court believes that the plaintiff is fabricating his injuries, but merely that there is very little medical testimony to support his declarations. The Court finds the evidence shows clearly that if plaintiff has a disability from the Bennett’s fracture it occurred before the injury of June 8, 1966, and whatever disability he has, if any, was not job-connected or did not arise from the accident complained of.
Since the defendant, Market Insurance Company, has already paid compensation benefits to the plaintiff for the period of disability testified to by Dr. Reiger for a period of ten weeks, no further award is to be made for compensation benefits.
Therefore, for these reasons assigned, the Court dismisses plaintiff’s suit at his costs. Judgment will be signed accordingly.”
Therefore, for the reasons as above stated by the Trial Court which we have adopted as our own, the judgment of the Trial Court is affirmed. All costs of this appeal are to be borne by the plaintiff.
Judgment affirmed.